EVA ROSENTHAL v. CITY OF GOLDSBORO.

(Filed 19 November, 1908).

1. **Municipal Corporations—Discretionary Powers—Public Welfare —Shade Trees—Condemnation Proceedings.**

The Courts will not interfere with the exercise of discretionary powers conferred upon municipal corporations for the public welfare, unless their action should be clearly so unreasonable as to amount to an oppressive and manifest abuse of their discretion; and, when in the exercise of their proper discretion, the authorities order shade trees along the sidewalks in front of a citizen's residence to be cut down to the injury of his property, for the preservation of the city sewerage, a restraining order should not be granted. (*Tate v. Greensboro*, 114 N. C., 392, cited and applied).

2. **Municipal Corporations—Discretionary Powers—Public Welfare —Condemnation Proceedings—Shade Trees—Notice—Damnum Absque Injuria.**

When a municipality, within the proper exercise of its discretionary powers, conferred upon them for the welfare of the public, condemn the trees on the sidewalk in front of the property of the citizen, no legal right of the citizen is infringed upon, and no previous notice to him is required. The injury, if any suffered by him, is *damnum absque injuria*. (*Brown v. Electric Co.*, 138 N. C., 533, cited and distinguished).

ACTION heard before *Guion, J.*, on case agreed, June Term, 1908, of WAYNE, to restrain the defendant from cutting down certain shade trees on the streets and sidewalks, within the corporate limits of the city of Goldsboro.

It appeared that the city authorities, in charge and control of the matter, having concluded that the roots from certain shade trees along the streets of the city obstructed and threatened the safety of the city sewerage, ordered removal of the trees, and, thereupon, the plaintiff, owning and occupying a residence abutting on the streets, and which would be injuriously affected by the execution of the order, instituted the present suit to restrain the contemplated removal.

From the facts stated in the pleadings, and admitted by the parties in open court, it appeared:

"This cause coming on to be heard, and the pleadings being read, the defendant thereupon admits that the elm trees, described in the complaint, are no more obstruction to the free use of the streets and sidewalks for travel than any other trees located on the streets of the city, but reiterates its allegation, that the said elm trees, and all other elms of the city, are nuisances in that they obstruct the sewerage of the said city. The Court, thereupon, from the pleadings in the case and the admissions in open court, finds the following facts:

"1st. That the defendant is a municipal corporation, duly chartered and organized.

2nd. That the plaintiff is, and has been for many years, a resident of the said city, and owns and occupies a dwelling house situated on the eastern side of James street in said city, and fronting about 105 feet on said street; that in front of said residence, and on the western side thereof, extending along the whole front thereof, and just inside the curb line of the sidewalk of said city, there have been for the last twenty years, and now are, seven or eight large, handsome elm trees, planted by the plaintiff and those through whom she claims title to the said lot, which said trees add greatly to the appearance and enjoyment of her said premises, and said trees make no more obstruction to the free use of the said sidewalk and street by the public for passage over it than is made by all other trees in said city.

3rd. That the plaintiff has a property right in said trees.

4th. That about twelve years ago the defendant constructed in said city a general system of sewerage, a portion of which passed through the middle of the street in front of the premises of the plaintiff, and which is now in use; that roots from some of the elm trees in the said city have penetrated in some portions of said city into the said sewer, and have thereby rendered the same less useful.

5th. That the said city is the owner of a system of water-works, supplying water to residents of said city for compen-

149—9

sation, and furnishing water to the city for public use, which system of water-works · is used in connection with the said system of sewerage by both said city and the citizens thereof, both constituting one system for the purpose of furnishing water, and, after its use, for the purpose of carrying off same.

6th. That on 7 January, 1907, the defendant took action to cause the trees of the plaintiff and all other citizens of the town to be cut down and removed from the streets of the city, as appears from the minutes of the meeting of the board of aldermen of said city, held on 7 January, 1907, which is as follows: 'The Street Committee was empowered to have all the elm trees along the line of the city sewers removed, and chief of police was instructed to employ a force of hands for that purpose, and to sell wood from said trees to help in defraying the expense of the removal of the same, having been condemned as injurious to sewers.'

That pursuant to said order the authorities of the said city have cut and removed from the streets of said city a number of elm trees, and were, at the beginning of this action, threatening to cut down and remove the trees of the plaintiff; that the plaintiff had no other notice of the purpose to cut down her trees than arises from the knowledge of the existence of the said order, and afterwards, an appearance by her agent before the board to effect a compromise, which was refused.

7th. That no proceedings were had or begun to condemn plaintiff's trees, and no compensation was tendered or offered to her for their destruction.

8th. That section 27 of the charter of the city of Goldsboro, provides that, among the powers herein conferred on the Board of Aldermen, they shall provide water, provide for repairing and draining the streets, * * * regulate, suppress, and remove nuisances * * * .

9th. That section 38 of the charter provides that the Board of Aldermen shall have power to lay open the new streets within the corporate limits of the city whenever by them

deemed necessary, and have power at any time to widen, enlarge, change or extend or discontinue any street or streets, or any part thereof, within the corporate limits of the city, and shall have full power and authority to condemn, appropriate to use, any land or lands necessary for any of the provisions named in this section.

10th. That section 46 of the charter provides, that the Board of Aldermen shall cause to be kept clean and in good repair the streets, sidewalks and alleys; they may establish the width, ascertain the location of those already provided, and lay out and open up others, and may reduce or increase the width of all of them."

And it was thereupon considered and adjudged by the Court:

"That it is not within the power of the defendant to destroy the trees in which the plaintiff has a property right, without just compensation to be ascertained upon due notice, and it is further considered and adjudged, that the defendant be perpetually enjoined from proceeding to cut down said trees until and unless a proper proceeding is instituted to condemn the same.

It is further adjudged, that the plaintiff recover the costs of the defendant, to be taxed by the Clerk."

Defendant excepted and appealed.

*Isaac F. Dortch* and *Aycock & Daniels* for plaintiff.
*J. L. Barham* for defendant.

HOKE, J., after stating the case: The decisions of this State are against the plaintiff's position, and the ruling of the Court below, upholding it; notably, the case of *Tate v. Greensboro,* 114 N. C., 392. That was a case involving the right of a city to remove shade trees from the streets and sidewalks, and the Court held as follows:

"1. A city has exactly the same rights in, and is under the same responsibilities for, a street which it controls by dedica-

tion only as in and for one which has been granted or condemned; and the rights of the abutting proprietor are no greater in such street than if it had been granted or condemned.

2. The law gives to municipal corporations an almost absolute discretion in the maintenance of their streets, since wide discretion as to the manner of performance should be conferred where responsibility for improper performance is so heavily laid.

3. The charter of the city of Greensboro and the general law of the State (The Code, ch. 62, Vol. II) give to the municipal authorities of that city wide discretion in the control and improvement of its streets, and if damage result to an abutting property owner by reason of acts done by it neither negligently nor maliciously and wantonly, but in good faith in the careful exercise of that discretion, it is *damnum absque injuria.*

4. The Courts will not interfere with the exercise of a discretion reposed in the municipal authorities of a city as to when, and to what extent, its streets shall be improved, except in cases of fraud and oppression constituting manifest abuse of such discretion."

In order to show how far the principle was applied in that decision, it appeared that the city authorities, having concluded that the trees, from their shade and placing, tended to prevent the proper maintenance of the streets in reference to the public benefit and convenience, ordered their removal, and on the hearing the Judge found: "That the trees did not obstruct the passage of persons on the sidewalks; that the public convenience did not require their destruction; that the mud hole in the street, for the removing of which this act seems to have been done, could have been remedied without cutting down the trees. And, on the facts, *Burwell, J.,* in his well considered opinion, thus stated the question presented:

"This phase of the case presents for our consideration this question: Can the Courts review the exercise by the city of Greensboro of its power to repair and improve its streets and remove what it considers obstructions therein, and find and declare that certain trees in the streets of that city, which the municipal authorities honestly believe were injurious and obstructive to the public, were in fact not so, and upon such findings, there being no allegation of negligence or of any want of good faith on the part of the city, award damages to an abutting proprietor, the comfort of whose home has been lessened by the removal of the trees?"

And in reference thereto, among other things, said:

"Hence it is that the law gives to all such corporations an almost absolute discretion in the maintenance of their streets, considering, it seems, as is most reasonable, that wide discretion as to the manner of performance should be conferred where responsibility for improper performance is so heavily laid. Illustrative of this is the provision of the Code, 3803, that the commissioners of towns 'shall provide for keeping in proper repair the streets and bridges of the town *in the manner and to the extent they may deem best.*' We think that under its charter and under the general law of the State (The Code, ch. 62, Vol. II) the city of Greensboro was clothed with such discretion in the control and improvement of its streets, and if damage comes to the plaintiff by reason of acts done by it, neither negligently nor maliciously and wantonly, but in good faith in the careful exercise of that discretion, it is *damnum absque injuria. Smith v. Washington,* 20 How., 136; *Brush v. City of Carbondale,* 78 Ill., 74; *Pontiac v. Carter,* 32 Mich., 164."

The opinion further quotes with approval from the case of *Chase v. City,* 81 Wis., 313, as follows:

"The right of the public to the use of the street for the purpose of travel extends to the portion set apart and used for sidewalks, as well as to the way for carriages, wagons,

etc., and, in short, to the entire width of the street upon which the land of the lot owner abuts. As against the lot owner the city, as trustee of the public use, has an undoubted right, whenever its authorities see fit, to open and fit for use and travel the street over which the public easement extends to the entire width, and whether it will so open and improve it, or whether it should be opened and improved, is a matter of discretion to be determined by the public authorities to whom the charge and control of the public interests in and over such easements are committed. With this discretion of the authorities Courts cannot, ordinarily, interfere upon the complaint of the lot owner so long as the easement continues to exist. * * * The public use is the dominant interest, and the public authorities are the exclusive judges when and to what extent the streets shall be improved. Courts can interfere only in cases of fraud and oppression, constituting manifest abuse of discretion. It necessarily follows, that for the performance of this discretionary duty by the city officers in a reasonable and prudent manner, no action can be maintained against the city."

This doctrine, so clearly and forcibly stated by the learned Justice, was apparently qualified to some extent in *State v. Higgs,* a decision of this Court, reported in 126 N. C., 1014, but this last decision was itself overruled in the recent case of *Small v. Edenton,* 146 N. C., 527, and it may now be considered as established with us, that our Courts will always be most reluctant to interfere with these municipal governments in the exercise of discretionary powers, conferred upon them for the public weal, and will never do so unless their action should be so clearly unreasonable as to amount to an oppressive and manifest abuse of their discretion. This position is, we think, supported by the better reason, and is in accord with the decided weight of authority. *Brodnax v. Groom,* 64 N. C., 244; *Chase v. City,* 81 Wis., *supra; City v. Shaw,*

155 Ill., 37; Smith's Mod. Law Munic. Corporation, section 1311.

True, the doctrine announced in *Tate v. Greensboro, supra,* was in reference to the removal of shade trees when considered as an obstruction to travel, but the dominant principle discussed and applied was in reference to the general power of a municipal government over its streets when exercised for the benefit and convenience of the public; and this principle is none the less potent, and its application none the less necessary, because the motive and purpose of exercising the power was for the preservation of the city sewerage. It is well established that the right of user for the last purpose arises to the public by reason of the dedication (Elliott on Streets, sec. 17), and, in a matter of such supreme and controlling importance, it would lead to most deplorable results if municipal governments could be stopped or hindered in their efforts, taken in good faith, to preserve the public health, unless their action should come clearly under condemnation within the principle announced as law in that decision.

Nor could any valid objection be made because no notice was given plaintiff. It is true, that where condemnation is required, notice must be provided for or given at some stage of the proceedings, though we have held, in *State v. Jones,* 139 N. C., 613, that such notice is not required when the order of appropriation is made, but is sufficient if provided for when the appraisement is made or the amount of compensation is to be fixed; but that is where some right of the injured party is wrongfully invaded, making condemnation proceedings necessary. In the present case, as we have endeavored to show, the authorities of the city being in the exercise of discretionary powers, conferred upon them by the law for the welfare of the public, and there being no evidence tending to show a want of good faith or oppressive abuse of their discretion, there is no legal right of plaintiff infringed upon. The injury, if any suffered by her, is *damnum absque injuria.*

We again refer to *Tate v. Greensboro, supra,* as authority for the position that no notice was required.

There is nothing here said which conflicts, or is intended to conflict, with the decision of this Court in *Brown v. Electric Co.,* 138 N. C., 533, cited, and to a great extent relied upon, by plaintiff. In that valuable opinion, delivered in protection of the just rights of the individual citizen, it was held, that a municipal government had no power to confer upon a corporation, exercising its privileges for purposes of private gain, the right to construct and operate a street railway, along the public streets of a city or town, so as to deprive abutting owners of their right to compensation by reason of the additional burden thus placed upon the streets. A perusal of the opinion will show that the decision was placed distinctly on the ground that such action of the city government was clearly not taken for the benefit of the public, or in the exercise of powers conferred for its benefit and which were contemplated and included in the original act of dedication, but in promotion of a private enterprise. Accordingly, it was held in that case:

"3. An abutting owner has property in shade trees standing along the sidewalk which the law will protect, and they may not be removed except where their removal is necessary for the use of the street as a public highway."

There was error in the judgment entered below, and, on the facts stated and admitted, there should be judgment entered that defendant go without day, and it is so ordered.

Reversed.