W. C. CROTTS v. CITY OF WINSTON-SALEM.

(Filed 3 November, 1915.)

1. **Municipal Corporations—Streets and Sidewalks—Discretionary Powers.**

Streets are public highways in cities for travel by the public, and adjacent owners have no more rights in them than the public generally, except the right of ingress, egress, light and air and lateral support, it being within the discretionary power of the proper municipal authority to determine where and how the streets shall be improved, what part is

CROTTS *v.* WINSTON-SALEM.

required for travel of vehicles, and what part, if any, shall be divided off as a pavement for the sole use of pedestrians; and the courts can interfere with the exercise of this discretion only in case of fraud and oppression, constituting manifest abuse thereof.

**2. Same—Pedestrians—Adjoining Owner—Rights of Owner—Damages.**

The owner of a city lot surrounded by three streets and formed by them into a triangle sixty by sixty-seven and sixty-eight feet, brings action against the city for a mandamus to provide sidewalks around his lot, sidewalks across the street therefrom having been made by the city authorities. The municipal authorities had deliberated upon the matter and concluded that the public necessity and convenience did not require the sidewalks contended for by plaintiff, and that such would make the streets too narrow and cause congestion of traffic therein; that the sidewalks across the street were sufficient, and to use those proposed, pedestrians would have to cross over the street for the purpose. *Held*, the exercise of the discretionary authority of the municipal authorities in refusing to establish the sidewalks contended for, is not reviewable by the courts, and no damages are recoverable in the action.

**3. Appeal and Error—Pleadings—Trials—Nonsuit.**

Where the complaint states no cause of action, a judgment of nonsuit may be entered in the Supreme Court.

APPEAL by defendant from *Cline, J.,* at September Term, 1915, of FORSYTH.

The plaintiff brings this action to recover from the city of Winston-Salem damages for the failure of the city to provide sidewalks around a triangular lot owned by him where West End Boulevard debouches into Summit Street.

The plaintiff purchased the lot marked No. 87 from H. D. Shutt and others as shown on the plat of the property subdivided by them and sold as the "Summit Street Extension." The lot is a small triangle, being 60 feet on one side, 67 on another and 68 feet on the other side. At the time the plaintiff bought lot No. 87, it was surrounded by the Bethania Road on the west, by West End Boulevard on the east and southeast, and by Summit Street Extension on the north. Since the purchase of the lot by plaintiff, P. H. Hanes has donated sufficient land on the west to widen the Bethania Road into a street of about 55 feet in width. But the donation was made on the condition that no part of it should be used for a sidewalk adjacent to the Crotts lot. West End Boulevard is an old established street, opened in 1890, and the street to the north of lot No. 87, now known as Summit Street Extension, was opened prior to the time that the lot was purchased by plaintiff.

*L. M. Swink for plaintiff.*
*Manly, Hendren & Womble for defendant.*

CLARK, C. J. The plaintiff owns the small triangular lot No. 87, surrounded on all sides by the three streets. In the fall of 1914 the county,

under the direction of the city, paved those streets with Belgian block without setting off any sidewalks around said triangular lot, which was 60 feet on one side, by 67 feet on another, and 68 feet on the other. The plaintiff desired that the city should set aside a part of the street

around this triangular lot for sidewalks. The aldermen, however, finally decided, after full consideration at several meetings, that the public necessity and convenience did not require sidewalks at that point, and that the whole roadway around that lot was required for the street, to prevent congestion, as there is only 50 feet from the edge of the sidewalk on the opposite side up to the plaintiff's property line,

and if sidewalks were placed around said triangular lot, which was an "island," so to speak, surrounded by three streets, it would unnecessarily narrow the streets. The plaintiff neither claimed nor showed any ownership in the land where he wished the city to lay out sidewalks around his property. No pedestrian could use the sidewalk if laid out around plaintiff's lot without crossing the street for that purpose alone. The plaintiff frankly said that he wished the sidewalks laid out by the city that he might have an opportunity to display his goods for sale thereon. If the city were to take from the body of the streets eight feet (the usual width of sidewalks in the vicinity) for sidewalks around plaintiff's lot, this would practically be a donation by the city almost solely for the plaintiff's benefit of an area of the public streets nearly equal to the entire area of the plaintiff's lot. This would be very advantageous for the plaintiff, but in the judgment of the aldermen, charged with the duty of laying out streets and sidewalks it was not for the public benefit, and in their discretion it was refused.

Streets are public highways in cities for travel by the public, and adjacent property owners have no more rights in them than the public generally, except the right of ingress, egress, light and air and lateral support. The control of the streets is in the governing authority of the city, who can decide when and how the streets shall be improved, what part is required for travel of vehicles and what part, if any, shall be divided off as a pavement for the use of pedestrians solely. Courts can interfere only in case of fraud and oppression constituting manifest abuse of discretion. *Tate v. Greensboro,* 114 N. C., 392; *Rosenthal v. Goldsboro,* 149 N. C., 128; *Wood v. Land Co.,* 165 N. C., 367.

In *Rosenthal v. Goldsboro, supra,* the Court said: "As against the landowner the city, as trustee of the public use, has an undoubted right, whenever its authorities see fit, to open and fit for use and travel the street over which the public easement extends to the entire width, and whether it will so open and improve it, or whether it should be opened and improved, is a matter of discretion to be determined by the public authorities to whom the charge and control of the public interests in and over such easements are committed. . . . The public has a dominant interest, and the public authorities are the exclusive judges of when and to what extent the streets shall be improved. Courts can interfere only in cases of fraud and oppression constituting manifest abuse of discretion. . . . It may now be considered as established with us that our courts will always be most reluctant to interfere with the municipal governments in the exercise of discretionary powers conferred upon them for the public weal, and will never do so unless their action shall be so clearly unreasonable as to amount to an oppressive and manifest abuse of their discretion."

In *Hester v. Traction Co.,* 138 N. C., 293, it is said: "A sidewalk is simply a part of a street which the town authorities have set apart for the use of pedestrians. The abutting proprietor has no more right in the sidewalk than in the roadway. His rights are that simply the street, including roadway and sidewalk, should not be closed or obstructed so as to impair ingress or egress to his lot by himself and those whom he invites there for trade or other purpose. An abutting owner of a street and sidewalk has an easement in his frontage which he may use in subordination to the superior rights of the public. Sidewalks are of modern origin. Anciently they were unknown, as they still are in eastern countries, and perhaps in a majority of the towns and villages of Europe. In the absence of statutes a town is not required to construct a sidewalk. It is for the town to prescribe the width of the sidewalk. In the absence of statutory restriction, it may widen, narrow, or even remove, a sidewalk already established."

Upon the evidence, the court below should have directed a nonsuit, but as the complaint states no cause of action, let it be entered here.

Action dismissed.