MARGARET A. LEE AND HUSBAND v. TOWN OF WAYNESVILLE.

(Filed 20 December, 1922.)

1. **Municipal Corporations—Cities and Towns—Condemnation—Eminent Domain—Streets and Sidewalks—Discretionary Powers—Courts.**

   The courts will not interfere with the statutory discretionary powers given to the governing authorities of an incorporated town to take lands from adjoining owners in widening its streets for the public welfare, unless their action in doing so is so unreasonable as to amount to an oppressive and manifest abuse of the exercise of this discretion. C. S., 2791, 2792.

2. **Same—Appeal and Error—Findings of Facts.**

   Where it appears that the governing authorities of a town have taken plaintiff's adjoining lands to widen a street intersecting with other streets so as to lessen the danger to traffic thereon, and it is made to appear by affidavits and otherwise that doing so was a reasonable exercise of the discretion vested in them, the findings of the trial judge, upon opposing affidavits, that such course was unnecessary to a certain extent, and reducing the width of the land which should be appropriated for the purpose, is not binding on the Supreme Court on appeal, the question being, primarily, whether the administrative authorities of the town have so grossly and manifestly abused the exercise of their discretionary powers as to render their action ineffectual, which does not appear upon the facts of the instant case.

**3. Municipal Corporations—Cities and Towns—Streets and Sidewalks—Condemnation—Eminent Domain—Estoppel.**

> The governing authorities of a town are not estopped to condemn land for the widening or improving of its streets by reason of an owner having put extensive improvements on his land a long time prior to the time it was condemned for that purpose, the power of condemnation, in cases of this character, being a continuing one to be exercised when and to the extent that the public good may require it.

Appeal by defendant from *Ferguson, J.,* at chambers in Waynesville, 25 August, 1922, from Haywood.

Civil action, heard on return to a preliminary restraining order. On the hearing there were facts tending to show that the board of aldermen of the town of Waynesville, acting under statutory authority, had properly resolved upon and were proceeding to carry out a plan of improvement in straightening, widening, and opening the streets of said town, and in pursuance of their plans proposed to cut off from plaintiff's lot a corner of same to the extent in all of 28 feet where it projected an acute angle towards the intersection of three or more of the prominent streets of the town. The conditions presented being as shown in the plat of the official engineer, submitted and used at the hearing and hereto annexed.

Plaintiffs thereupon instituted the present suit to restrain the board of aldermen from appropriating the portion of plaintiffs' lot as proposed, and a preliminary restraining order having been issued, his Honor, as stated, heard and considered the matter and entered judgment in terms as follows: "This is a motion to continue restraining order heretofore granted to the hearing. After hearing the pleadings and evidence offered, and the argument of counsel, I find the following facts from the evidence:

"That heretofore, some thirty years ago, the town of Waynesville laid off and established streets, Boundary Street and Walnut Street connecting. The plaintiffs purchased property on the corner of Boundary and Walnut streets, and at great expense built a home, planted out shade trees, and otherwise improved his yard and premises, and the streets have remained in that condition from that time up to the present. The defendants, the mayor and board of aldermen of the town of Waynesville, have undertaken to improve the said town by widening, straightening, and hard-surfacing the principal streets of the town, and with that view had a survey made by an engineer, and in making the survey of Boundary Street and Walnut Street, the town proposes to run through the plaintiff's yard, taking at the widest point 21½ feet, and reserving the right to still take further ground for the purpose of putting down the sidewalk.

LEE *v.* WAYNESVILLE.

Map showing intersections of Branner Ave., Boundary & Walnut Sts. in Town of Waynesville, N.C.

"Upon the evidence offered and duly considered, it appears that it will be necessary to take off a small portion of the corner of the plaintiff's lot, but that it is not necessary to take as much as the defendant claims to have a right to do, and as it has been surveyed. That to do so would not add any additional security to the traveler on the streets, or any of them, and would virtually destroy the plaintiff's property as a home, by running through his yard, cutting down his shade trees, and doing such irreparable and unreasonable damage to the plaintiff's property and to his home that the same would be unreasonable, unjust, and oppressive to the plaintiff.

"Therefore, it is adjudged that the restraining order heretofore issued be modified so as to permit the defendant to run a line parallel with the one already surveyed, at the deepest point, not to be more than 15 feet from the corner of the plaintiff's lot, and to remove such obstructions as may be in the way in building said streets and finishing the same as contemplated by the defendant, and the defendant is perpetually restrained from entering any further on the plaintiff's premises either for the purpose of streets or sidewalks. The question of damages is not passed on."

Defendant excepted, and appealed.

*John M. Queen and Alley & Alley for plaintiffs.*
*Morgan & Ward and W. R. Francis for defendants.*

HOKE, J. From a consideration of the legislation applicable, it appears that the board of aldermen are possessed of ample authority to enter into the proposed improvements of straightening and widening the streets, and to condemn the property required for the purpose on payment of reasonable and just compensation. Private Laws 1885, ch. 127, sec. 16; Public-Local Laws, Extra Session 1921, ch. 28, sec. 3; C. S., 2791-2792; *Jeffress v. Greenville,* 154 N. C., 490; *Waynesville v. Satterthwait,* 136 N. C., 226. This being true, it is the accepted principle, declared and upheld in numerous decisions with us, that courts may not interfere in a given case with the exercise of discretionary powers conferred on these local administrative boards for the public welfare, unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of their discretion. *Newton v. School Committee,* 158 N. C., 186-188, citing *Jeffress v. Greenville,* 154 N. C., 490; *Rosenthal v. Goldsboro,* 149 N. C., 128; *Ward v. Comrs.,* 146 N. C., 534; *Small v. Edenton,* 146 N. C., 527; *Tate v. Greensboro,* 114 N. C., 392; *Brodnax v. Groom,* 64 N. C., 244. And there may be added the cases of *Dula v. School Trustees,* 177 N. C., 426-431; *Crotts v. Winston-Salem,* 170 N. C., 24; *Durham v. Rigsbee,* 141 N. C., 128. In *Rosenthal*

*v. Goldsboro, supra,* the Court, quoting from and interpreting the case of *Tate v. Greensboro,* 114 N. C., 392, stated the position referred to as follows:

"The law gives to municipal corporations an almost absolute discretion in the maintenance of their streets, since wide discretion as to the manner of performance should be conferred where responsibility for improper performance is so heavily laid.

"The charter of the city of Greensboro and the several laws of the State (The Code, ch. 62, vol. 2) gives to the municipal authorities of that city wide discretion in the control and improvement of its streets, and if damage results to an abutting property owner by reason of acts done by it neither negligently nor maliciously and wantonly, but in good faith in the careful exercise of that discretion, it is *damnum absque injuria.*

"The courts will not interfere with the exercise of a discretion reposed in the municipal authorities of a city as to when and to what extent its streets shall be improved, except in cases of fraud and oppression constituting manifest abuse of such discretion.

"In order to show how far the principle was applied in that decision, it appeared that the city authorities, having concluded that the trees, from their shade and placing, tended to prevent the proper maintenance of the streets in reference to the public benefit and convenience, ordered their removal, and on the hearing the judge found: 'That the trees did not obstruct the passage of persons on the sidewalk; that the public convenience did not require their destruction; that the mud hole in the street, for the removing of which this act seems to have been done, could have been remedied without cutting down the trees.' And on the facts, *Burwell, J.,* in his well considered opinion, thus stated the question presented: 'This phase of the case presents for our consideration this question: Can the courts review the exercise by the city of Greensboro of its power to repair and improve its streets and remove what it considers obstructions therein, and find and declare that certain trees in the streets of that city, which the municipal authorities honestly believe were injurious and obstructive to the public, were in fact not so, and upon such findings, there being no allegation of negligence or of any want of good faith on the part of the city, award damages to an abutting proprietor, the comfort of whose home has been lessened by the removal of the trees?'

"And in reference thereto, among other things, said: 'Hence it is that the law gives to all such corporations an almost absolute discretion in the maintenance of their streets, considering, it seems, as is most reasonable, that wide discretion as to the manner of performance should be conferred where responsibility for improper performance is so heavily laid. Illustrative of this is the provision of The Code, 3803, that the

commissioners of towns "shall provide for keeping in proper repair the streets and bridges of the town in the manner and to the extent they may deem best." We think that under its charter and under the general laws of the State (The Code, ch. 62, vol. 2) the city of Greensboro was clothed with such discretion in the control and improvement of its streets, and if damage comes to the plaintiff by reason of acts done by it, neither negligently nor maliciously and wantonly, but in good faith in the careful exercise of that discretion, it is *damnum obseque injuria.* *Smith v. Washington,* 20 How., 136; *Brush v. City of Carbondale,* 78 Ill., 74; *Pontiac v. Carter,* 32 Mich., 164.' "

It is the recognized rule of procedure in appeals of this character that the Court is not concluded by the finding of facts made by the trial judge. *Hyatt v. DeHart,* 140 N. C., 270, and on consideration of the entire evidence, and in view of the principle sustained by the authorities above cited, we are of opinion that the judgment of his Honor cannot be sustained. While the plaintiff and several other witnesses submitted affidavits to the effect that in their opinion the appropriation of plaintiff's property, to the extent proposed, will cause them irreparable damage, and is not at all required by the public good, and will practically destroy their property as a residence, there are affidavits from several of the board of aldermen and the city engineer to the effect that on learning that there would be objection made to the condemnation as proposed, they caused a resurvey to be made; that they also made personal examination of the locality, and passed the resolution with the consultation and advice of numerous citizens and taxpayers, on being convinced that the cutting off of the acute angle of plaintiff's yard was necessary to the convenience and safety of the public using the streets and sidewalks in that locality. These resolutions and findings are supported by the affidavits of several citizens, that the proposed change is desirable, and even necessary; and there are, too, facts in evidence permitting the inference that the damage to the property will not be so extensive as plaintiffs now think and contend. Here is sharp divergence of opinion certainly, but nothing to justify a conclusion that there has been gross abuse of discretion on the part of defendants to the manifest oppression of plaintiffs. This view is also confirmed by a perusal of the official map put in evidence showing the sharp projection of plaintiffs' lot into the present course of three important and much frequented streets, where, even in the opinion of the trial court, there should be a further condemnation of fifteen feet of this angle. The objection to the judicial modification of defendant's resolution, however, is that the question is primarily and exclusively submitted to the municipal government, and his Honor has no power whatever in the premises unless and until manifest abuse and oppression are first established. Nor is there any ques-

tion of estoppel presented by reason of the fact that the streets were laid off as they now exist before plaintiffs ever built and improved the property. The better opinion being that the power of condemnation, in cases of this character, is a continuing one to be exercised when and to the extent that the public good may require. *Power Co. v. Wissler,* 160 N. C., 269; Elliott on Roads and Streets (3 ed.), sec. 260.

On the record and the facts as thus far presented, we are of opinion that no right to a restraining order has been shown, and the judgment of the trial court must be set aside.

Reversed.