N. C. MULLEN, on Behalf of Himself and All Other Citizens and Taxpayers of the TOWN OF LOUISBURG Who May Become Parties Plaintiff Herein, v. THE TOWN OF LOUISBURG, N. C., THE COMMISSIONERS FOR THE TOWN OF LOUISBURG, W. C. WEBB, Mayor of Said Town, and T. K. STOCKARD, Clerk of Said Town (Original Parties Defendant), and CAROLINA POWER & LIGHT COMPANY (Additional Party Defendant).

(Filed 21 March, 1945.)

**1. Parties § 4—**

A third party, before he will be permitted to become a party defendant in a pending action, must show that he has some legal interest in the subject matter of the litigation. His interest must be of such direct and immediate character that he will either gain or lose by the direct operation and effect of the judgment, and it must be involved in the subject matter of the action. One whose interest in the matter is not a direct

or substantial interest, but is an indirect, inconsequential, or a contingent one cannot claim the right to defend.

**2. Appeal and Error §§ 37c, 37e: Injunctions § 12—**

While in appeals from orders granting or denying injunctive relief. the findings of fact made by the court below are not conclusive, such findings are presumed, in the absence of exceptions, to be supported by evidence, and it does not behoove this Court to seek for cause to upset or reverse the same.

**3. Contracts § 7f: Municipal Corporations § 19a—**

The provisions of G. S., 143-129, are not applicable to a contract between a municipal corporation and a public utility for the purchase wholesale of electric current for redistribution through the municipality's local plant.

**4. Statutes § 5a—**

It is the duty of the Court, where the language of a statute is susceptible of more than one interpretation, to adopt the construction and practical interpretation which best expresses the intention of the Legislature, for "the heart of a statute is the intention of the lawmaking body."

**5. Contracts § 7f: Municipal Corporations § 19a—**

The purpose of G. S., 143-129, is to prevent favoritism, corruption, fraud, and imposition in the awarding of public contracts by giving notice to prospective bidders and thus assuring competition, which in turn guarantees fair play and reasonable prices in contracts involving the expenditure of a substantial amount of public money.

**6. Same: Public Utilities § 2b—**

The statute (G. S., 143-129) applies only to contracts in relation to supplies and materials where the bidders have the right to name the price for which they are willing to furnish the same. It has no application whatever to a contract between a municipality and a public utility, where there can be no competition between bidders because the municipality or the State has the power and authority to fix the price of the service to be rendered or the commodity to be furnished.

**7. Municipal Corporations §§ 19b, 26—**

A municipality is authorized by the express terms of the statute, G. S., 160-2 (6), to grant franchises to public utilities. The terms and conditions upon which they are to be granted, unless clearly unreasonable or expressly prohibited by law, rest in the sound discretion of the local body.

**8. Municipal Corporations §§ 19b, 20: Contracts § 7f—**

It is a general rule that officers of a municipal corporation, in the letting of municipal contracts, perform not merely ministerial duties but duties of a judicial and discretionary nature, and that courts, in the absence of fraud or palpable abuse of discretion, have no power to control their actions.

**9. Same—**

Where a municipality decides to abandon the generation of electricity by the use of Diesel engines and substitute therefor electricity purchased wholesale for distribution through its electric plant, and in pursuance of such change of policy, advertises a sale of its Diesel engines, under G. S., 160-59, there is no sale by such municipality of its electric plant requiring approval of a majority of the qualified voters under G. S., 160-2 (6).

APPEAL by plaintiff from *Williams, J.,* in Chambers at Raleigh, N. C., 23 January, 1945.    From FRANKLIN.

Civil action in which plaintiff seeks injunctive relief.

Defendant Town of Louisburg owns and operates an electric light plant for the benefit of its citizens.    Diesel engines furnish the motor power necessary to generate the required electricity.    The plant has paid the cost of its operation and in addition has contributed a substantial sum to the town treasury.

For years citizens have advocated a change of policy.    They proposed that the town cease generating its electricity and in lieu thereof purchase wholesale the required supply from the Carolina Power & Light Company (hereafter referred to as the Power Company).    There was strong opposition to the proposed change.    Until recently a majority of the Town Board has opposed the change.    A recent appointment to fill a vacancy has changed the balance of power within the board.

On 20 September, 1944, the Town Board, by resolution, requested the Power Company to make a survey and appraisal of electric light and power properties of the town.

On 3 November, 1944, a representative of the Power Company appeared before the board at a regular meeting and proposed that the town sign a tendered application for the purchase of electric energy and power from the Power Company for redistribution to its customers through its local plant in lieu of generating same as theretofore.    As a part of the same general plan, the Power Company proposed that the town grant it a franchise for the use of its streets by the Power Company in transmitting and distributing electric energy.

At said meeting the Town Board authorized the mayor and clerk to execute the proposed application for the purchase of electric energy and passed on its first reading an ordinance granting a franchise for the use of its streets by the Power Company.

On 13 November, 1944, the town gave public notice that on 16 December, 1944, it would offer three of its four Diesel engines for sale at public auction to the highest bidder.

On 6 December, 1944, plaintiff instituted this action in which he seeks to restrain the sale of the Diesel engines, the granting of the proposed

franchise, and the purchase of electric energy wholesale from the Power Company for redistribution. In his complaint he alleges that the sale of the engines constitutes a sale of its light plant and is unauthorized and unlawful until and unless approved by vote of the electorate of the town. He also alleges that the Town Commissioners have disregarded positive provisions of the law, ignored the wishes of the people, proceeded without due investigation, acted arbitrarily, breached campaign promises, and otherwise abused the discretion reposed in them by law.

On plaintiff's application, Carr, J., on 6 December, 1944, issued a temporary restraining order and notice to show cause returnable before Harris, J., 22 December. On the return date of the notice the Power Company appeared and moved that it be made a party defendant and be allowed to defend as such. The motion was granted and an order making the Power Company a party defendant was duly signed. Plaintiff excepted. Thereupon Harris, J., continued the hearing on the notice to show cause to be had before Williams, J., 27 January, 1945.

When the cause came on to be heard before Williams, J., pursuant to said continuance, he found certain facts, made certain conclusions of law, and entered judgment dissolving the temporary restraining order and dismissing the action. Plaintiff excepted and appealed.

G. M. Beam and Smith, Leach & Anderson for plaintiff, appellant.

Malone & Malone for defendant, appellee, Town of Louisburg.

W. L. Lumpkin and A. Y. Arledge for defendant, appellee, Carolina Power & Light Company.

BARNHILL, J. Plaintiff has properly preserved and brought forward his exception to the order of Harris, J., making the Power Company a party defendant. In our opinion the exception is meritorious and must be sustained.

A third party, before he will be permitted to become a party defendant in a pending action, must show that he has some legal interest in the subject matter of the litigation. His interest must be of such direct and immediate character that he will either gain or lose by the direct operation and effect of the judgment, and it must be involved in the subject matter of the action. One whose interest in the matter in litigation is not a direct or substantial interest, but is an indirect, inconsequential, or a contingent one cannot claim the right to defend. 39 Am. Jur., 900, 935.

Although the enforcement of the judgment, when rendered, might benefit or prejudice the applicant, this does not entitle him to intervene as a defendant if its effect is indirect, as where the party for or against

whom the judgment is rendered may, because of it, become more or less able to satisfy some obligation existing from him to the intervener. 39 Am. Jur., 935; *Cleveland R. Co. v. North Olmsted,* 130 Ohio St., 144, 101 A. L. R., 426; *School Dist. v. Royal Oak Twp. School Dist.,* 293 Mich., 1, 127 A. L. R., 661; *Wightman v. Evanston Yaryan Co.,* 217 Ill., 371, 75 N. E., 502; *Grand Rapids v. Consumers' Power Co.,* 216 Mich., 409, 185 N. W., 852.

Creditors and distributees of an estate may be materially affected by a judgment against the administrator, as would taxpayers by a judgment against the municipality. Yet, in the absence of peculiar circumstances, it would hardly be contended that these would be entitled to appear, become parties to the action, and defend. The Power Company is in no better position than one of these. Its only interest in the litigation rests upon the fact that the judgment rendered may or may not prevent the defendant town from consummating the proposed transactions which have not yet reached a contract status. This is not such an interest as will support the order entered.

Counsel for plaintiff stressfully contend that the Town Commissioners acted in bad faith and abused the discretion reposed in them by law in the many respects pointed out in their brief. This question has passed the point of debate. The court below expressly found as a fact: "That in all its acts and proceedings in connection with the matters or things in controversy herein the said Board of Commissioners of the Town of Louisburg was acting in good faith without abuse of any discretionary power or authority conferred upon them by law." To this finding plaintiff did not except. Hence the finding is presumed to be supported by evidence. *Joyner v. Stancill,* 108 N. C., 153; *Hawkins v. Cedar Works,* 122 N. C., 87; *Sturtevant v. Cotton Mills,* 171 N. C., 119, 87 S. E., 992; *Hickory v. Catawba County,* 206 N. C., 165, 173 S. E., 56; *Wilson v. Robinson,* 224 N. C., 851.

It is true that in appeals of this character from an order granting or denying injunctive relief, the findings of fact made by the court below are not conclusive. *Smith v. Bank,* 223 N. C., 249. Yet it does not behoove us to seek for cause to upset or reverse a finding the correctness of which appellant at least impliedly concedes when he fails to except thereto.

G. S., 143-129, provides that neither any institution of the State nor any county, city, or town shall award a contract for the purchase of apparatus, supplies, materials, or equipment requiring an estimated expenditure of public money in an amount equal to or in excess of $1,000 except to the lowest responsible bidder after due advertisement as provided in the Act.

It is conceded that the proposed contract for the purchase of electricity involves a sum in excess of $1,000. Is the purchase wholesale of electric current from a public utility for redistribution through the defendant's local plant a "letting" of a public contract for "supplies" within the meaning of the Act?

While there is a conflict of judicial opinion on this question, the great weight of authority is to the effect that such contracts are not within the intendment of such requirement. Anno. 128 A. L. R., 168. Indeed some, if not all, the cases cited *contra* are not in point either factually or by reason of the provisions of the applicable statute. Clearly the terms "apparatus," "materials," and "equipment" denote particular types of tangible personal property and could not be construed to include electric energy. Hence, if the purchase of a required quantity of electricity is within the purpose and intent of the Act, it is by virtue of the use of the term "supplies." As this term is used in conjunction with other terms having a particular connotation, it might be said that its meaning as used in the statute is confined to property of like kind and nature.

Conversely, given its broadest and most comprehensive meaning "supplies" are things supplied, the quantity or amount of a commodity at hand, needed or desired. And "commodity" means that which affords convenience or profit, especially in commerce. Webster's New International Dictionary. Thus it might be construed to include electricity furnished for redistribution.

"Hundreds of words in the English language bear more than one meaning. 'Few words are so plain that the context or the occasion is without capacity to enlarge or narrow their extension.'" Crawford, Statutory Construction, 276, sec. 174.

It is the duty of the court then to find the legislative intent. In so doing, the context of the Act and the spirit and reason of the law must be considered, for it is the intention of the Legislature, as expressed in the statute, which controls. Crawford, *supra*, 292. Cases within the letter of a statute, if without its spirit, will not come within its interpretation. Crawford, *supra*, 293.

It is the universal rule that in seeking the intent it is the duty of the Court, where the language of a statute is susceptible of more than one interpretation, to adopt the construction and practical interpretation which best expresses the intention of the Legislature, *Dyer v. Dyer*, 212 N. C., 620, 194 S. E., 278, for "the heart of a statute is the intention of the lawmaking body." *Trust Co. v. Hood, Comr.*, 206 N. C., 268, 173 S. E., 601; *Dyer v. Dyer, supra;* Crawford, *supra*, 291.

The purpose of the statute, G. S., 143-129, is to prevent favoritism, corruption, fraud, and imposition in the awarding of public contracts

by giving notice to prospective bidders and thus assuring competition which in turn guarantees fair play and reasonable prices in contracts involving the expenditure of a substantial amount of public money. It has application to contracts for the purchase of materials and supplies where the bidders are free to name the price for which they are willing to furnish the same.

Where in the very nature of things competition would be impossible, it could not be supposed with any degree of justification that the legislative purpose was to compel the municipality to go through the useless form of letting to the lowest bidder when in fact there could be but one bidder who could name only the rate or price fixed by an agency of the very government that prescribed the procedure.

The better reason dictates the conclusion that the statute applies only to contracts in relation to supplies and materials where the bidders have the right to name the price for which they are willing to furnish the same. It has no application whatever to a contract between a municipality and a public utility where there could be no competition between bidders because the municipality or the State has the power and authority to fix the price of the service to be rendered or the commodity to be furnished. *Mutual Electric Co. v. Village of Pomeroy,* 124 N. E., 58; *Hartford v. Hartford Electric Light Co.,* 32 Atl., 925; *State v. Oconto Electric Co.,* 161 N. W., 789; *Los Angeles Gas & Electric Corp. v. Los Angeles,* 205 Pac., 125; 3 McQuillin, Municipal Corporations (2nd), 866; Anno. 128 A. L. R., 168.

It seems clear that such provisions are intended to apply to contracts where the public policy requires that competition be had to obtain a reasonable charge for work performed or for materials and the like supplied to municipal corporations. *Hurley Water Co. v. Town of Vaughn,* 91 N. W., 971; *State v. Oconto Electric Co., supra.*

It does not apply when competition would be impossible or unavailing, 2 Dillon, Municipal Corporations (5th), 1199, or as to a monopoly, *ibid.,* 1202; *Harlem Gaslight Co. v. New York,* 33 N. Y., 309; Anno. 128 A. L. R., 168; *Hartford v. Hartford Electric Light Co., supra; Tanner v. Town of Auburn,* 79 Pac., 494.

The State has long since recognized that competition is an inadequate and unsatisfactory regulator of the rates and services of public utilities and has substituted public supervision and control for haphazard competition. G. S., ch. 62. The Utilities Commission, an agency of the State, has general control over and fixes the rates to be charged by public utilities. G. S., 62-27, 30, 36; G. S., ch. 62, Art. 4. Discrimination is prohibited. G. S., 62-70. Territory to be served is allocated in such manner as to meet the needs of the particular community. G. S., 62-101.

Here the defendant Power Company has already entered and is serving the territory which includes and embraces the defendant town. The court below so found and to such finding there is no exception. Its rates are subject to the approval of the Utilities Commission. Other public utilities are without authority to enter that territory and engage in competitive bidding for customers. The application for electric power filed by defendant town is on the standard form of the power company for the supply of electric power to municipalities for the purposes and under the conditions involved and the rate schedule and rules and regulations composing a part of said application are on file with and approved by the Utilities Commission, thereby constituting it the only application, the only rate and the only rules and regulations under which the defendant Power Company could, without discrimination, furnish said electric service to said town, whether by private negotiations as employed herein, or in the form of a bid in response to the town's advertisement. (Judgment of court below.) Hence advertisement for bidders would be a vain and useless undertaking and a foolish and absurd performance. An interpretation which required it would be against reason.

The plaintiff likewise attacks and seeks to enjoin the granting of the proposed franchise. But in this respect the board is acting within the express terms of the statute which empowers it to grant franchises to public utilities—and in this instance it has acted "in good faith without abuse of any discretionary authority" vested in it by law. G. S., 160-2 (6). The terms and conditions upon which they are to be granted, unless clearly unreasonable or expressly prohibited by law, rest in the sound discretion of the local board.

"It is a general rule that officers of a municipal corporation, in the letting of municipal contracts, perform not merely ministerial duties but duties of a judicial and discretionary nature, and that courts, in the absence of fraud or a palpable abuse of discretion, have no power to control their action." 38 Am. Jur., 175; *Pue v. Hood,* 222 N. C., 310, 22 S. E. (2d), 561; *Lee v. Waynesville,* 184 N. C., 565, 115 S. E., 51; *Pickler v. Board,* 149 N. C., 221; *Crotts v. Winston-Salem,* 170 N. C., 24, 86 S. E., 792.

The courts may not interfere with the exercise of the discretionary powers of local administrative boards for the public welfare "unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of their discretion." *Reed v. Highway Com.,* 209 N. C., 648, 184 S. E., 513. The finding of the court below in this respect is against the plaintiff.

The judicial branch of the Government was never intended to be and it will not presume to act as a super agency to control, revise, modify,

or set at naught the official acts of local administrative and governmental agencies.   The plaintiff must show as a prerequisite to court intervention that some legal right has been or will be infringed.   This the plaintiff has failed to do.

If the local board is acting contrary to the wishes of a majority of the citizens it serves, the remedy is at the ballot box.   The suggestion that such remedy may come too late is not sufficient to justify judicial interference.

But plaintiff contends that in any event a sale of the Diesel engines is a sale of the light plant and is unauthorized unless and until approved by a majority of the qualified voters of the town.·  G. S., 160-2 (6).

It may be that under some circumstances the sale of the motor power ·of an electric light plant would constitute in effect a sale of the plant. ·On this record such is not the case here.

The proposed plan is nothing more than a proposed change in policy regarding the manner and method of obtaining electricity for redistribution—a substitution of the purchase wholesale for local generation. Necessarily such a change will eliminate the need for some of the equipment on hand.   Such would be the case if the shift was from electric power to water power or from steam power to electric power.   The plant will remain on hand and continue in full operation.   Good judgment and sound common sense dictate the plan to sell the machinery which will no longer be needed in its efficient operation.

*Raynor v. Comrs. of Louisburg,* 220 N. C., 348, 17 S. E. (2d), 495, cited and relied on by plaintiff is not in point.   We there held that the purchase of Diesel engines is a purchase of apparatus and equipment within the meaning of G. S., 143-129.   The record discloses that the Commissioners of the defendant town were complying with the terms ·of the statute, G. S., 160-59, at the time the restraining order herein was issued.

The order of Harris, J., making the Power Company a party defendant is reversed.   The clerk will tax against said defendant one-half the costs incurred by plaintiff on this appeal in addition to the cost incurred on its own behalf.

The judgment of the court below is

Affirmed.