The plaintiffs brought this action for injunction permanently restraining the defendant from proceeding further in the construction of a pumping station intended to be connected with the city water system, and a mandatory decree requiring the removal of the uncompleted structure. *Page 622 
The plaintiff complains that the structure it is intended to complete constitutes a nuisance in that it is located in the public street adjacent to plaintiffs' dwelling, which is nearing completion, and interferes with ingress and egress to and from the premises; and will, if completed, obstruct the plaintiffs' view from that side of the house, important because of the character of the surroundings and the use to which the property is put as a pleasure resort; and that if put into operation the noise of the continual pumping will interfere with the comfort and welfare of plaintiffs in the enjoyment of their property. All this the defendant denies.
The plaintiffs, at the time of institution of the action, obtained a temporary restraining order and order to show cause, returnable before Judge Burney, who heard the matter at Chambers in Wilmington, July 15, 1948.
The decision of the appeal deals principally with the question of obstructing the public streets of the city, and incidental relief demanded by the plaintiffs regarding the alleged nuisance, and it is not thought necessary, nor is it practicable, to set out in detail many of the assignments of error brought forward, such as objections to the admission of evidence, which have, nevertheless, been duly considered. Evidence pertinent to the inquiry is summarized:
At the hearing the pleadings on both sides were introduced as affidavits in the cause and numerous other affidavits were presented together with explanatory maps and photographs.
It may be inferred from the evidence that plaintiffs own the property on which they are now building, by mesne conveyances of successive holders from 1910. They purchased in 1946. The lot so purchased appears upon the map of Wrightsville Beach Extension duly recorded in New Hanover County, showing its location as bounded on the East by Lumina Avenue and on the South by Raleigh Street. On the south it runs with Raleigh Street approximately 100 feet toward Banks Channel, otherwise known as The Sound. In that place Banks Channel, looking to the north, veers eastward, making an angular area beyond the west boundary of the property, including what is designated on the map as the "bluff," or bank, running down into a declivity increasing in degree to the water line. There has been built around plaintiffs' property, on the property line, a retaining wall of cinder blocks, along the Raleigh Street side and partially on Lumina Avenue and along the sound side. The physical situation at the situs of the controversy as shown by the maps and description of witnesses is as follows:
The area known as Raleigh Street between Lumina Avenue and the sound is unpaved. Near the western line of plaintiffs' property and at the point where the bank begins to incline toward the water of the sound, the city, about 12 years ago put up a barrier of posts 12" in diameter and *Page 623 
30" above the ground, closing off the bank leading to the sound as a dangerous area, and to prevent the use of that portion of the area by the public as a passageway or street. This portion of the area known as Raleigh Street is described as a "dead end" and incapable of use as a street because of the steep declivity of the bank, the contour and topography of the ground; and the evidence of defendant tends to show that it had never been used as such and could not be so used.
The structure of which the plaintiffs complain is beyond this barrier toward the sound; and the contour map sent up with the record shows a substantial incline in the bank, beginning before the structure is reached and continuing with greater declivity beyond it. The structure as far as completed shows a concrete slab over the well approximately 6' square, about half way between the north and south boundaries of Raleigh Street projected westerly, but somewhat nearer the northern boundary. Between the structure and north side there is 19.23' and between the structure and the south side it is 24.85' which with the 5.92' width of the slab, makes up the 50'. It is a base for the pump house which is intended to be about 7' high, including the cap put on to prevent noises. From this base it is intended to connect by short underground pipe with pipe already installed in the area as a part of the water system. The western boundary of plaintiffs' property is cast of this structure and the concrete slab foundation is some 10' beyond the aforementioned barrier, toward the sound.
For the plaintiffs Mrs. Bullock, in her affidavit, states that she owns a home on Raleigh Street and has known it as it extends from the Atlantic Ocean to the Sound for the last eight years. That about the year 1940 her husband built a pier at the western terminus of Raleigh Street and that the street has been continuously used as a street by the public and property owners adjacent thereto, and owners of the pier. Further, that employees of the city have in the past put gravel and other substances on the surface so that the street from Lumina Avenue westward to the Sound could be used and that it has been used by automobiles and other vehicles as well as pedestrians.
The defendant introduced further evidence tending to show that a condition of extreme emergency existed in the city respecting its water supply, which was wholly inadequate. That the city had employed competent engineers who had made a thorough survey with a view to the location of a well site giving access to water sufficiently free from salt, or salinity. That in this survey they tested water from other borings and found it to be too saline for use; and that the location chosen was the only available site where pure water could be obtained.
Affidavits offered by defendant tended to show that the well was placed approximately 25' from the high water mark of the sound and in an area that had never been used as a public street by the Town of Wrightsville *Page 624 
and that the area west of Lumina Avenue comes to a dead end or "dropoff" beyond which it could not be used as a street. The evidence tended to show that all the area sometimes called Raleigh Street west of Lumina Avenue adjoining the property of the plaintiffs which could be used at all is still open to the plaintiffs and has not in any manner been cut off, and that they have adequate access thereto. Evidence with illustrating photographs was offered tending to show that plaintiffs had the area between barrier posts mentioned and Lumina Avenue offering free access to their premises.
Considering this evidence and more to like effect which may be regarded as cumulative on both sides and needs no further detailed notice, Judge Burney found inter alia that the area called Raleigh Street west of Lumina Avenue had never been accepted as a public street by the City of Wrightsville Beach, had not been laid out, graded, prepared or improved by the City nor generally accepted as such by the public. That there is no specific west end or terminus to the street shown; and that the topography and drop or incline of the bank made it necessary for the town to erect barriers to cut off that area from any use by the public as a street; that the well complained of is located approximately 10' west of the barrier, and with the concrete structure complained of is wholly west of the said barriers; and that the well and its foundations and the structure intended to house the pumps and motor do not, and will not, interfere in any manner with the use of plaintiffs' property or access thereto; or any portion of the area called Raleigh Street which could be used as a street by the public or the plaintiffs. To these findings plaintiffs excepted.
On the facts so found the trial court concluded that plaintiffs were not entitled to the relief demanded and entered judgment declining the prayer for injunction and dismissed the action. Plaintiffs excepted and appealed.
Realizing that the crux of the present controversy lies in the question whether the City of Wrightsville has accepted or adopted the area in which the well and pump house is located as a public street, either through appropriate resolution of its governing body or acts from which such adoption might be inferred, we have endeavored as far as practicable to confine the foregoing summary of the proceedings below, and particularly the evidence, to the immediate issues. We do not consider as of controlling importance many of the objections taken on the *Page 625 
trial to the admission of evidence and do not discuss them in detail. They have been, however, carefully considered.
While the action is captioned as an action in behalf of the public, there is no challenge to the jurisdiction of the trial court to hear the controversy, make findings of fact and conclusions of law and enter judgment thereupon.
We do not find it necessary in this discussion to balance, item by item, the findings of fact with supporting evidence, because the issue is so narrow the relevancy is readily seen. And while it has been held that the appellate court is not bound by the findings of fact by the trial judge in granting or withholding an injunction, (Mullen v. Louisburg, 225 N.C. 53,33 S.E.2d 484; Smith v. Bank, 223 N.C. 249, 251, 25 S.E.2d 859), we are at a loss to find any substantial reason why they should be disturbed, and are impelled to hold that the conclusions of law necessarily follow as a correct application of legal principles.
From a legal point of view, as testing the validity and propriety of the instant proceeding, it seems clear to us that failing to establish their contention that the offending structure is within the public street, plaintiffs have presented no ground for injunctive interference with the city's project.
The land upon which the alleged nuisance is located does not belong to the plaintiffs nor was it, so far as the record shows, owned by their predecessors in title. The allegations of nuisance, therefore, taken on a new angle of incidence. There remains but the question raised by the plaintiffs as to the obstruction of view or outlook, and expected discomfort of noise; but we see no obstruction of a public thoroughfare. Whether upon similar allegations and proof the plaintiffs would have a legal standing in court against a private owner of the adjacent property for such a use of it, we need not inquire. The plaintiffs are not suing a private person, but a municipality which has the power of eminent domain; and if they have suffered any loss or impairment of their property by reason of actionable nuisance their remedy is not by injunction.
The judgment of the court below is
Affirmed. *Page 626