QUEEN CITY COACH COMPANY, A CORPORATION v. JAMES S. CURRIE, COMMISSIONER OF REVENUE OF NORTH CAROLINA.

(Filed 16 March, 1960.)

**1. Statutes § 5a—**

A statute must be interpreted to effectuate the legislative intent.

**2. Taxation § 29—**

Where the net operating income of a bus carrier is ascertained in accordance with the statutory formula after State taxes other than income taxes have been included in computing its operating expenses, such carrier is not entitled under the provisions of G.S. 105-136 (prior to its repeal by Chapter 1340, S.L. 1957) to deduct again from its net operating income allocated to its business within this State the amount of State taxes other than income taxes, the proviso of the act applying only when the net operating income is ascertained without deducting State taxes other than income taxes.

APPEAL by plaintiff from *Sharp, Special Judge,* December Civil Term, 1959, of MECKLENBURG.

This is a civil action, seeking a refund of income taxes for the year 1955 paid by the appellant to the Commissioner of Revenue, hereinafter called Commissioner.

This cause arises under the provisions of section 105-136 of the General Statutes of North Carolina. This statute was repealed by Chapter 1340, section 4, of the Session Laws of 1957; therefore it applies only to questions which arose prior to 1 July 1957.

The plaintiff filed its corporate income tax return for the calendar year 1955 with the Commissioner in apt time. The return as filed showed no taxes due for the year. Subsequently, the Commissioner issued a proposed assessment against the plaintiff for alleged income taxes due for said year in the amount of $9,588.04, with interest in the sum of $1,246.45, a total of $10,834.49. Following a protest and hearing the Commissioner ruled against the taxpayer and declared that the tax and interest were due and owing. On or about 9 July 1958 the plaintiff paid the alleged tax and interest under protest and made proper demand for refund. Upon failure of the Commissioner to refund the amount paid, the plaintiff instituted this action.

Pursuant to a stipulation of the parties, the trial judge heard the matter on an agreed statement of facts without a jury. Judgment was rendered in favor of the defendant. The plaintiff appeals, assigning error.

COACH CO. v. CURRIE, COMMISSIONER OF REVENUE.

*Attorney General Seawell, Assistant Attorney General Pullen for the State.*

*Coble & Behrends for plaintiff.*

DENNY, J.   The provisions of G.S. 105-136 which are essential to an understanding of the question involved in this appeal, are as follows: "The basis of ascertaining the net income of every corporation engaged in the business of operating a steam, electric railroad, express service, telephone or telegraph business, or other form of public service, when such company is required by the interstate commerce commission to keep records according to its standard classification of accounting, shall be the 'net revenue from operations' of such corporation as shown by their records, kept in accordance with that standard classification of accounts when their business is wholly within this state, and when their business is in part within and in part without the state, their net income within this state shall be ascertained by taking their gross 'operating revenues' within this state, including in their gross 'operating revenues' within this state the equal mileage proportion within this state of their interstate business, and deducting from their gross 'operating revenues' the proportionate average of 'operating expense' or 'operating ratio' for their whole business, as shown by the interstate commerce commission standard classification of accounts:

"Provided, that if the standard classification of operating expenses prescribed by the interstate commerce commission for railroads differs from the standard classification of operating expenses prescribed by the interstate commerce commission for other public-service corporations, such other public-service corporations shall be entitled to the same operating expenses as prescribed for railroads. From the net operating income thus ascertained shall be deducted 'uncollectible revenue' and taxes paid in this state for the income year other than income taxes, and the balance shall be deemed to be their net income taxable under this article. * * *"

There is also included in the foregoing statute a formula for ascertaining net operating income of a public service corporation.

It was stipulated by the parties that during the calendar year 1955 plaintiff had a total operating revenue of $4,341,549.91, and total operating expenses, as computed under the Uniform System of Accounts prescribed by the Interstate Commerce Commission, of $4,129,343.64, resulting in an operating ratio for plaintiff's entire business, as shown by the Interstate Commerce Commission's Standard Classification of Accounts, of 95.10 per cent. That all taxes paid to the State of North

Carolina by the plaintiff for the calendar year 1955 (except income taxes) were included in the total operating expense of $4,129,343.64. That such taxes were proper deductions as operating expenses under the Interstate Commerce Commission's Standard Classification of Accounts for Class I common and contract motor carriers of passengers in effect in 1939 and in 1955.

The plaintiff conducted business partly within and partly without this State in 1955. Therefore, the statutory formula had to be followed for ascertaining the plaintiff's gross "operating revenues" within the State. The mileage proportion figure for 1955 in this State was 75.11 per cent. Applying this mileage proportion to the total revenues, resulted in a gross operating revenue within this State of $3,261,238.57.

Applying the operating ratio, or proportionate average of operating expenses of 95.10 per cent, to operating revenues within the State of $3,261,238.57, results in operating expenses in this State of $3,101,437.88. Subtracting the proportionate average of operating expenses from the gross operating revenues within the State, leaves a balance of $159,800.69. This amount was plaintiff's net operating income in North Carolina for the year 1955.

There is no disagreement with respect to the accuracy of these figures or the method by which they were ascertained.

It was further stipulated in the court below that in the year 1955 the plaintiff paid taxes in North Carolina (other than income taxes), in the sum of $250,890.40. In making its income tax return for 1955, the plaintiff took the position that it was entitled to deduct the $250,890.40 as an offset against the net operating income of $159,-800.69, thus leaving no amount on which it was required to pay an income tax.

The plaintiff contends that the provisions of G.S. 105-136 in effect at that time not only authorized the deduction but directed it to be made. We do not concur in this view.

It was also stipulated by the parties that the Standard Classification of Accounts prescribed by the Interstate Commerce Commission in 1939 and for the calendar year 1955 for Class I railroads, did not authorize the deduction of taxes by such railroads in computing their net revenue operations. There is a sound reason for not allowing the railroads to deduct the taxes (other than income taxes) paid in any particular state until the operating revenues of the road is ascertained exclusive of such taxes. By such method, a given state is favored or penalized with respect to the amount on which income taxes must be paid, depending on whether these taxes (other than income taxes) are higher or lower than in other states in which the railroad operates.

For the same reason it would seem that such method should also be applied to motor carriers of passengers. However, such method, it appears, was not followed with respect to common and contract motor carriers of passengers in 1955.

In our opinion, when G.S. 105-136 is interpreted aright, it simply means that every public service corporation "shall be entitled to the same operating expenses as prescribed for railroads." Then the statute further provides: "From the net operating income thus ascertained shall be deducted 'uncollectible revenue' and taxes paid in this state for the income year other than income taxes, and the balance shall be deemed to be their net income taxable under this article." We interpret the phrase, "From net operating income *thus ascertained,*" to mean, when the net operating income of a public service corporation is required to be ascertained exclusive of taxes paid, other than income taxes, then the deductions provided for in the proviso shall be made. (Emphasis added)

This Court said in *Watson Industries v. Shaw,* 235 N.C. 203, 69 S.E. 2d 505, "The legislative intent is the essense of the law and the guiding star in the interpretation thereof."*Midkiff v. Granite Corp.,* 235 N.C. 149, 69 S.E. 2d 166; *Mullen v. Louisburg,* 225 N.C. 53, 33 S.E. 2d 484; 50 Am. Jur., Statutes, section 223, page 200.

It is clear that a railroad could not obtain a double deduction of such taxes under the provisions of G.S. 105-136. Therefore, in our opinion, the proviso was intended to put railroads and other public service corporations on a parity with respect to the deduction of legitimate items of expense and not to create unfair discrimination between the railroads and other public service corporations.

We hold that the proviso in G.S. 105-136 does not authorize the deduction of any item which was properly included and deducted in ascertaining the net income under the required system of accounting by the Interstate Commerce Commission for common and contract motor carriers of passengers, which requirement was in effect in 1955. As pointed out hereinabove, the taxes paid to this State in the year 1955 (other than income taxes), in the sum of $250,890.40, were deducted as an operating expense in arriving at the plaintiff's total operating expenses for the year 1955. Hence, the judgment of the court below is

Affirmed.