HOWARD CLINTON MOORE, EMPLOYEE V. ADAMS ELECTRIC COMPANY, INC., EMPLOYER; NON-INSURER AND/OR INSURED BY ZURICH INSURANCE COMPANY, CARRIER; GREAT AMERICAN INSURANCE COMPANY, CARRIER.

(Filed 18 June, 1965.)

**1. Insurance § 6;   Master and Servant § 78—**

When a person operating a business as an individual incorporates the business, an insurer for the individual is not an insurer for the corporation, but if the insurer, after incorporation and with knowledge thereof, charges and collects premiums, it waives its right to object to the assignment, and the corporation becomes the insured under the policy.

**2. Master and Servant § 80—**

While G.S. 97-99 prescribes that notice of cancellation of compensation insurance be by registered or certified mail, the transmission of notice to insured and not the method of its transmission is determinative, and if insured actually receives a thirty-day notice of cancellation the coverage of the policy terminates at the expiration of the thirty-day period, notwithstanding notice is received by ordinary mail.

**3. Master and Servant § 94—**

Where the Industrial Commission fails to find facts in regard to whether insured received notice by ordinary mail of the cancellation of the policy, but holds that cancellation was ineffective in any event because notice was sent by ordinary mail, the award based upon the misapprehension of the applicable law must be set aside and the cause remanded for a finding of the determinative facts.

**4. Insurance § 3—**

A "binder" is insurer's acknowledgment of its contract to protect the insured against casualty of a specified kind until a formal policy can be issued or until insurer gives notice of its election to terminate, and where there is a standard policy form specified by statute for the contemplated insurance the binder relates to such standard policy form.

**5. Master and Servant § 80—**

The requirement of G.S. 97-99(a) of thirty days notice for termination of a policy of compensation insurance applies to a "binder" as well as a formal policy, and an insurer may not terminate the coverage of the binder as to a claim occurring less than thirty days from insured's receipt of notice of termination. G.S. 97-93.

APPEALS by defendants Zurich Insurance Company (Zurich) and Great American Insurance Company (American) from *Johnston, J.,* March 1965 Session of ROCKINGHAM.

Plaintiff, an employee of Adams Electric Company, Inc. (Employer) was, on February 7, 1960, injured when replacing switch boxes in Fieldcrest Mills in Reidsville. The injuries resulted from an accident arising out of and in the course of the employment. Employer and plaintiff

had accepted and were bound by the provisions of the North Carolina Workmen's Compensation Act.

Plaintiff applied to the Industrial Commission for an award of compensation. Based on the facts found, Commissioner Mercer, on October 19, 1961, fixing, in part, the compensation due plaintiff, made an award. The award placed the responsibility of payment on Employer. The findings and conclusions reached by Commissioner Mercer were on appeal approved by the Commission, but reversed on appeal by the Superior Court. It was there adjudged American and Zurich, as insurance carriers, were jointly liable for compensation and medical payments to be made to or for plaintiff. Zurich and American appealed from the judgment rendered by the Superior Court. We reversed, saying in the concluding paragraph of our opinion: "Because, in our opinion, the Industrial Commission failed to find the facts necessary for a determination of the rights of the parties, the judgment of the Superior Court must be reversed in order that it may remand to the Industrial Commission with directions to make necessary findings of fact on which the rights of the parties can be determined." *Moore v. Electric Co.,* 259 N.C. 735, 131 S.E. 2d 356.

On remand to the Industrial Commission, Commissioner Mercer, without taking additional evidence, made findings of fact and conclusions of law. Based on his findings and conclusions, he made an award in favor of plaintiff, holding Employer liable for the payments required to be made. Employer excepted to the findings, conclusions and award, and appealed to the Full Commission.

The findings made by the Commission, pertinent to a determination of these appeals, are summarized or quoted in the opinion. Based on its findings, the Commission concluded that Zurich and American were insurance carriers for Employer and, as such, jointly liable for compensation directed to be paid to plaintiff. Zurich and American excepted to the findings and appealed to the Superior Court. The Superior Court approved the findings and award made by the Commission, and adjudged Zurich and American jointly liable for the moneys owing plaintiff, as fixed by the Commission.

*Smith, Leach, Anderson & Dorsett for defendant appellant Great American Insurance Company.*

*Womble, Carlyle, Sandridge & Rice; Charles F. Vance, Jr., for defendant appellant Zurich Insurance Company.*

*Bethea, Robinson & Moore for defendant Employer.*

RODMAN, J. Neither in these nor in the prior appeals has the right of plaintiff to compensation been challenged by Employer or the in-

surance companies. Each defendant denies liability, insisting that one or both of the remaining defendants are liable to plaintiff.

The Commission found facts which summarily stated or quoted are as follows: From 1930 until July 22, 1959, M. E. Adams "was engaged in doing all types of electrical work and was operating under the trade name of Adams Electric Company." On July 22, 1959, he incorporated his business under the name of Adams Electric Company, Inc. He was the sole stockholder "and continued to operate his business as president of the corporation, rather than as an individual trading in the name of Adams Electric Company."

On March 22, 1959, American issued a workmen's compensation policy to M. E. Adams, t/a Adams Electric Company. The policy was written for a period of one year. American did not, after Adams incorporated his business in July 1959, obligate itself in writing to insure the workmen's compensation liability of the corporate Employer. "However, the incorporation by defendant employer had no effect upon the insurance policy of Great American. An audit was made by Great American for the period 22 March 1959 to 27 December 1959, and additional premium was charged defendant employer by Great American. Such additional premium was paid by defendant employer, as a corporation, to Great American. The billing date of the additional premium was 8 March 1960 and the amount paid as additional premium was $666.55." American carried workmen's compensation and automobile liability insurance for Employer. It elected to cancel all insurance it carried for Employer. To accomplish cancellation of the workmen's compensation insurance, it, on November 25, 1959, "sent a notice of cancellation to defendant employer. Such notice was sent by ordinary mail and was either not received by defendant employer, or was misplaced in the office of defendant employer. No notice of proposed cancellation of Great American's policy was ever sent to defendant employer by certified or registered mail." The notice of cancellation referred to above fixed December 27, 1959 as the date of termination of American's liability under its workmen's compensation insurance policy. American sent a copy of the notice showing its intent to cancel to the Compensation Rating and Inspection Bureau. The Rating Bureau sent notice of American's cancellation to Employer on February 3, 1960. Notice of the intended cancellation was also given to Reliable Insurance Agency, the local agency for American, which issued the policy to M. E. Adams on March 22, 1959.

Kraus, then the owner of Reliable Insurance Agency, upon receipt of the notice of American's intent to cancel the policy issued on March 22, 1959, arranged with Zurich "to go on the risk by means of a binder on a temporary basis, pending investigation of the matter. No agreement

was made as between defendant employer and Zurich Insurance Company as to what type of notice would have to be given to the cancellation of the binder, nor as to the period of time that would elapse between a notice of cancellation and cancellation of the binder. The securing of the binder by Mr. Kraus was done without the knowledge of Mr. M. E. Adams."

Thereafter, Kraus, as agent for Zurich, issued a certificate of insurance "for the purpose of showing to a company in Georgia for which defendant employer was doing work, that defendant employer was properly covered by workmen's compensation insurance * * *. The 'certificate of insurance' also provided that in the event of cancellation of said policies the insurance company would mail notices thereof to the company in Georgia, which was Dundee Mills, Inc. No notice of cancellation of the binder or the 'policies' was ever given in accordance with the 'certificates of insurance.'"

On January 25, Kraus, acting under instructions from Zurich, wrote Employer that Zurich was unwilling to continue coverage and would cease to afford such coverage on January 30, 1960. This letter was not sent by registered or certified mail, but the letter was received by Employer on January 27, 1960.

On January 27, 1960, one C. A. Myers, who had acquired the business of Reliable Insurance Agency, called on M. E. Adams in the attempt to sell insurance to replace the policy cancelled by American. He was informed by Adams that he, Adams, was in contact with another insurance agent who would obtain workmen's compensation insurance. The agent secured workmen's compensation insurance as an assigned risk. The policy so obtained was not issued until February 18, 1960.

"The workmen's compensation insurance policy issued by Great American Insurance Company was not properly canceled and no proper notice of the intent to cancel was given. Such insurance policy was in force at the time of the accident giving rise hereto on 7 February 1960. * * * [T]he requirements of the Statute [G.S. 97-99(a)] that the notice shall be sent by registered or certified mail is a mandatory provision and the insurance company must strictly follow the manner in which the Statute has specified that cancellation can be made; that the requirement that notice be sent by registered or certified mail would be proof that notice was sent to the insured, and it would not be left to speculation and would with definiteness and certainty call attention to the pending cancellation to a busy businessman.

"The workmen's compensation insurance policy or binder agreed to by Zurich Insurance Company contained no provision for cancellation or notice of cancellation contrary from the statutory provisions regard-

ing cancellation of workmen's compensation insurance policies, and no notice of proposed cancellation was properly given; nor was notice of cancellation of the policy given in accordance with the 'certificate of insurance' which had been issued by the agent of Zurich Insurance Company. The Zurich insurance policy or binder was, therefore, also in force at the time of the injury by accident giving rise hereto on 7 February 1960."

Based on its findings, the Commission concluded as a matter of law: "Neither Great American Insurance Company nor Zurich Insurance Company gave notice of an intention to cancel their workmen's compensation insurance policies to defendant employer by registered mail or certified mail, as required by law. Both insurance carriers were, therefore, upon the risk at the time of the injury by accident giving rise hereto, and they are jointly liable for the payment of compensation which is due plaintiff on account of his injury by accident. G.S. 97-99."

It is apparent from the foregoing summary of the Commission's findings that it has intermingled factual and legal conclusions, and incorporated the conclusions so reached as factual findings. The questions presented by the appeals require separate consideration. For orderly treatment, we answer first the questions presented by the appeal of American. The first question American presents is: Did it insure payment of compensation to the employees of Adams Electric Company, Inc.? It insists the answer should be "no."

The policy, in form approved by the Commissioner of Insurance, provided: "Assignments of interest under this policy shall not bind the company until its consent is endorsed thereon." We agree with American's contention that Adams' sale of his business to the corporate entity he created to operate that business did not impose liability on American for injuries sustained by employees of the corporation. *Underwood v. Liability Co.*, 258 N.C. 211, 128 S.E. 2d 577; *Rendelman v. Levitt*, 24 S.W. 2d 211; *Yoselowitz v. Peoples Bakery*, 277 N.W. 221; *State Ins. Fund v. Industrial Commission of Utah*, 205 P. 2d 245; Anno: "Assignment by assured of policy of indemnity or liability insurance, or of rights thereunder," 122 A.L.R. 144; Schneider, Workmen's Compensation, § 2499; Couch, Clycopedia of Insurance Law, § 1450; 45 C.J.S. 49; 29 Am. Jur. 946.

Seemingly, the Commission recognized the fact that Adams, by the mere transfer of his business to a corporate entity, could not enlarge the policy provisions so as to make the corporation an insured, and its employees beneficiaries of the insurance contract issued to M. E. Adams. It found: "The incorporation by defendant employer had no effect upon the insurance policy of Great American."

While the transfer did not impose any obligation on the insurer, nevertheless, if American, with knowledge of the transfer, charged and collected premiums from the corporation, it waived its right to object to the assignment. The corporation, because of the waiver found by the Commission, became an insured under the policy. *Greene v. Spivey,* 236 N.C. 435, 73 S.E. 2d 488; *Pearson v. Pearson, Inc.,* 222 N.C. 69, 21 S.E. 2d 879; *Yoselowitz v. Peoples Bakery, supra; Standard Life & Acc. Ins. Co. v. Bambrick Bros. Const. Co.,* 143 S.W. 845. As said in *Black v. Swetnick,* 120 N.Y.S. 2d 663, "The carrier must be deemed to have intended to insure the enterprise upon whose payroll the premium was based."

American, as compensation insurance carrier for Employer, is obligated for the sums adjudged by the Commission, unless it has, as it asserts, established cancellation of its insurance contract.

Policies issued to employers covering an employer's liability for workmen's compensation insurance must, by express statutory language, G.S. 97-99, conform to a standard approved by the Insurance Commissioner. The statute expressly provides: "No policy form shall be approved unless the same shall provide a 30 day notice of an intention to cancel the same by the carrier to the insured by registered mail or certified mail."

The Commission paramounted the manner of giving notice rather than the fact of notice. It found the notice "was sent by ordinary mail and was either not received by defendant employer or *was misplaced in the office of defendant employer.*" Based on this finding, the Commission concluded: "Neither Great American Insurance Company nor Zurich Insurance Company *gave notice* of an intention to cancel their workmen's compensation policies to defendant employer *by registered mail or certified mail,* as required by law. *Both insurance carriers were, therefore, upon the risk at the time of the injury * * *.*"

The statutory requirement of 30 days' notice of intent to cancel was intended to assure an employer sufficient opportunity to procure other insurance. The manner in which notice is given is of secondary importance — it is the fact of notice that is important. If, in fact, Employer had 30 days' notice from American of its intent to terminate its compensation insurance on December 27, 1959, the fact that notice was given by some means other than registered or certified mail would not prevent cancellation.

Because of a misinterpretation by the Industrial Commission of the statutory requirement of 30 days' notice of intent to cancel, it reached the erroneous conclusion that the policy could only be terminated by registered or certified mail. The Commission should have answered this factual question: Did Employer have 30 days' actual notice of Amer-

ican's intent to cancel its insurance policy on December 27, 1959? Until that question has been answered, the liability of American can not be determined. That portion of the judgment of the Superior Court affirming the award made by the Commission against American is reversed. That court will remand the cause to the Commission in order that it may make necessary findings of fact on which it may make an award.

After American had given notice of its intent to cancel its compensation insurance policy issued Employer, and prior to the date fixed for cancellation, Zurich, by "binder," insured Employer's compensation liability. On January 25, 1960, it notified Employer it "would cease to afford such coverage effective 30 January 1960."

The liability of Zurich depends on the sufficiency of the notice to cancel. If required by statute, G.S. 97-99(a), to give 30 days' notice of intent to cancel, Zurich was, on February 7, 1960, the day of the injury, bound by its contract.

In insurance parlance, a "binder" is insurer's bare acknowledgment of its contract to protect the insured against casualty of a specified kind until a formal policy can be issued, or until insurer gives notice of its election to terminate. The binder may be oral or in writing. *Lea v. Insurance Co.*, 168 N.C. 478, 84 S.E. 813; *Distributing Corp. v. Indemnity Co.*, 224 N.C. 370, 30 S.E. 2d 377; 44 C.J.S. 497; Binder, Webster's Third New International Dictionary.

Where a standard form of contract is prescribed by statute, "the law will read into the contract the standard policy as fixed by the statute." *Floars v. Insurance Co.*, 144 N.C. 232, 56 S.E. 915.

Our statute, G.S. 97-99(a), provides for a formal policy approved by the Insurance Commissioner, denying to the Commissioner the right to approve a policy which does not require at least 30 days' notice of intent to cancel, unless cancellation is based on nonpayment of premiums, in which event at least 10 days' notice must be given.

Zurich argues the statute, by express language, is limited to formal policies and does not relate to binders since it contains no provision requiring notice of an intent to cancel a binder.

The contention requires an interpretation of the statutory language. Is the word "policy," used in the statute, limited to the formal written document which insurer executes, or does it comprehend all contracts for workmen's compensation insurance? To correctly interpret a statute, legislative intent must be ascertained since that "is the guiding star in the interpretation of statutes." *State v. Humphries*, 210 N.C. 406, 186 S.E. 473; *Mullen v. Louisburg*, 225 N.C. 53, 33 S.E. 2d 484; *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 69 S.E. 2d 505; *Coach Co. v. Currie, Commissioner of Revenue*, 252 N.C. 181, 113 S.E. 2d 260.

An insurer is not obligated to notify insured of the date specified in the contract for termination; but where termination results from insurer's affirmative action, he must give notice of the date when cancellation will become effective. How much notice shall he give? The statute answers "30 days," if cancellation is not caused by nonpayment of premiums. To hold otherwise would defeat manifest legislative intent that the employer's liability should be insured at all times, G.S. 97-93. Employers may qualify as self-insurers, or they may, if necessary to meet the statutory requirement, obtain assigned risk insurance, G.S. 97-103(b). To qualify as a self-insurer, or to obtain private insurance, the employer must supply the Bureau or an insuring company with information with respect to his business and operations, all of which takes time.

Holding, as we do, that the statute, G.S. 97-99, applies to all workmen's compensation insurance, whether it be evidenced by a binder or by a policy, it follows that the judgment imposing liability on Zurich must be, and is affirmed.

As to American: Reversed and remanded.

As to Zurich: Affirmed.