***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence affirms in part, reverses in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The plaintiff-employee in this matter is Ervin Stallings. The defendant-employer is Harbor Welding, Inc.
2. Clarendon National Insurance Company is the alleged defendant-carrier on risk at the time of the accident on 8 April 2000.
3. Defendant-employer regularly employs three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act. The Industrial Commission has jurisdiction over the parties and all parties have been named properly in this action. An employment relationship existed between plaintiff and defendant-employer on 8 April 2000.
4. Plaintiff's average weekly wage at the time of the injury was $358.75.
5. Plaintiff suffered a compensable injury by accident on 8 April 2000 when he fell approximately fifteen (15) feet off a ladder, shattering his right foot and causing a hairline fracture to his left foot.
6. Plaintiff is not entitled to temporary total benefits because his salary was continued until his return to work on 25 August 2000.
7. Plaintiff has a twenty-one percent (21%) permanent partial disability rating to his right foot related to the compensable injury by accident, as provided by Dr. Scott Hannum, plaintiff's treating physician.
8. The medical treatment plaintiff received from the medical providers as indicated in the stipulated medical records was reasonable and necessary pursuant to N.C. Gen. Stat. §§ 97-2(19) and 97-25.
9. The following are known medical providers that are owed for charges of medical care related to the compensable injury by accident sustained on 8 April 2000. There may be others:
a. Beach Medical Care: $673.00
b. Health East Outer Banks: $285.00
c. Dare County EMS: $313.00
d. Pamlico Orthopaedics: $636.00
e. Beaufort County Hospital: $10,821.79
10. The issue before the Commission is a determination of the party responsible for payment of plaintiff's medical treatment and permanent partial disability rating assigned by his treating physician, Dr. Scott Hannum.
11. The following documents were stipulated into evidence:
a. Plaintiff's medical records.
 b. Documents relating to the issuance and cancellation of workers' compensation policies issued to defendant-employer by defendant-carrier.
 c. A cancelled check from defendant-employer dated 5 April 2000.
d. Discovery responses prepared by defendants.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the deputy commissioner, plaintiff was twenty-five years of age. Plaintiff completed high school and then spent a year and one-half in college.
2. Defendant-employer hired plaintiff in March or April 1999 as a general laborer. He earned $7.00 per hour plus overtime. His duties included "anything the boss man needed done," and helping skilled laborers complete their duties.
3. Defendant-employer was owned and operated by Wayne Umphlett, plaintiff's uncle. Harbor Welding employed three or more employees in the State of North Carolina at all times relevant to this claim.
4. Plaintiff was paid an average weekly wage of $358.75, yielding a compensation rate of $239.18 per week.
5. On 8 April 2000, plaintiff suffered an admittedly compensable injury while he was putting up a sign for defendant-employer. Plaintiff lost his balance while on the ladder putting up the sign and fell approximately fifteen feet. He landed feet first, fracturing his left foot and shattering his right heel.
6. Plaintiff was transported by EMS to Beach Medical Care. He was subsequently seen at Health East Outer Banks. The medical staff there told plaintiff that he needed surgery as soon as possible.
7. On 12 April 2000, plaintiff followed up at Pamlico Orthopaedics with Dr. Scott Hannum, who put his left foot in a cast and set his right foot in a soft cast. On 18 April 2000, Dr. Hannum performed surgery on plaintiff's right foot at Beaufort County Hospital.
8. Plaintiff engaged in physical therapy at Beaufort County Hospital after the surgery. Plaintiff testified that it was his understanding that his medical bills would be paid by workers' compensation insurance. The secretary at defendant-employer, Louise Brickhouse, informed plaintiff that defendant-employer's workers' compensation carrier would take care of the medical bills. Plaintiff delivered his bills to Louise Brickhouse when he received them.
9. Plaintiff continued to treat with Dr. Hannum and he was written completely out of work until 25 August 2000. Plaintiff received full salary continuation from defendants for all periods of time that he missed work related to his injury. On 26 August 2000, defendants provided suitable light duty work and plaintiff did in fact return to work.
10. On 20 October 2000, Dr. Hannum opined that plaintiff had reached maximum medical improvement and assigned a 21% impairment rating to the right foot. On 13 April 2001, Dr. Hannum evaluated plaintiff as part of a regularly scheduled year follow-up and indicated that he did not recommend plaintiff participate in running or pounding sports. No other restrictions were placed on plaintiff's ability to work.
11. Plaintiff voluntarily left defendant-employer for employment with Weyerhaeuser at higher wages. He is under no restrictions at his job with Weyerhaeuser.
12. The undersigned finds and the parties have stipulated that plaintiff is not entitled to temporary total benefits because his salary was continued until his return to work on 25 August 2000.
13. Plaintiff retains a 21% permanent partial disability of his right foot and is entitled to an award of 30.24 weeks (x.) $239.18.
14. All medical treatment that plaintiff has received was reasonable and necessary to effect a cure, provide relief and lessen plaintiff's period of disability.
15. The owner of defendant-employer is Thomas Wayne Umphlett. He has owned and run his own business for approximately sixteen years. Thomas Umphlett testified that he employed approximately twenty-five employees and regularly carried workers' compensation insurance. At the time of plaintiff's injury, Thomas Umphlett believed that he had workers' compensation coverage provided by defendant-carrier, Clarendon National Insurance Company (hereinafter Clarendon National).
16. Defendant-employer's insurance agent was John Pierce, who was employed by BBT Beam Cooper Gainey Associates, an insurance agency. John Pierce secured workers' compensation insurance for defendant-employer from defendant-carrier Clarendon National. Defendant-employer's payments were financed through Commerce Capital Incorporated (hereinafter Commerce Capital). Defendant-employer signed a security agreement by which defendant-employer granted Commerce Capital a security interest in unearned premiums and dividends that may become payable. Defendant-employer's initial policy term was for one year, 10 December 1999 to 10 December 2000. Defendant-employer provided a down payment of $5,020.80 and was to make periodic payments of $2,237.14 to Commerce Capital.
17. The security agreement contained the following language:
 CANCELLATION: Commerce Capital, Inc. may cancel the insurance policies and the unpaid balance due to Commerce Capital, Inc. shall be immediately payable by the insured if any of the following occur:
 (a) The insured does not pay any installment according to the terms of this Agreement.
 (b) The insured does not comply with any of the terms of this Agreement.
. . .
 POWER OF ATTORNEY: The insured irrevocably appoints Commerce Capital, Inc. its Attorney-In-Fact with full authority to cancel the insurance policies, receive all sums assigned to Commerce Capital, Inc. [.]
18. The insurance policy between defendant-carrier and defendant-employer provided that the insured, defendant-employer, may only cancel the policy with a ten-day written notice. The policy provided, "If you cancel this policy, you must mail or deliver not less than 10 days written notice to us stating when the cancellation is to take effect." Under the power of attorney clause in the security agreement between Commerce Capital and defendant-employer, Commerce Capital was granted the same authority that defendant-employer had under the workers compensation insurance contract to cancel the policy.
19. Defendant-employer fell behind in payments and Commerce Capital sent a document labeled "Notice of Intent to Cancel Insurance," dated 16 March 2000 to defendant-employer. The letter stated that defendant-employer's insurance would be cancelled if $2,327.14 were not paid by 2 April 2000. Upon receipt of the notice, defendant-employer called John Pierce, the insurance agent from whom he purchased the insurance, secured financing from Commerce Capital, and arranged a meeting with him on 5 April 2000.
20. Commerce Capital sent a "Notice of Cancellation," dated 3 April 2000, canceling defendant-employer's insurance effective 2 April 2000, to defendant-employer, defendant-carrier, and BBT Cooper Gainey 
Associates, the agency for which John Pierce worked. The notice stated that Commerce Capital was canceling defendant-employer's insurance for non-payment of premium pursuant to their power of attorney.
21. Based on the greater weight of the evidence, it appears that Clarendon National acknowledged receipt of the "Notice of Cancellation" on 19 April 2000 from Commerce Capital. The "Policy Termination/Cancellation/Reinstatement Notice," issued by Clarendon National on 19 April 2000, which stated that defendant-employer's workers' compensation insurance was cancelled effective 2 April 2000, contained the following notice:
Termination/Cancellation/Nonrenewal
 The coverage provided by the policy number shown above is being ____ nonrenewed, or x terminated/canceled, ____ flat, x pro rata, or ____ short rate, effective 4/02/2000 12:01 a.m. standard time at the insured's mailing address for the following reason(s):
NON-PAYMENT OF PREMIUM
Amount Due: $16,289.98
22. On April 5, 2000, a meeting took place between Harbor Welding and Mr. Pierce. Attending the meeting for Harbor Welding were Mr. Umphlett and Ms. Brickhouse. As a result of that meeting, Harbor Welding issued a check in the amount of $11,458.06 to Beam, Cooper, Gainey 
Associates. Mr. Umphlett and Ms. Brickhouse understood that the tender of payment to Mr. Pierce got Harbor Welding current as to their insurance premiums and that everything was straightened out. At no time did Mr. Pierce make Mr. Umphlett or Ms. Brickhouse aware that Harbor Welding was not currently insured. Mr. Umphlett and Ms. Brickhouse believed that Harbor Welding was fully insured and were given no reason by the agent to think otherwise. Ms. Brickhouse testified she understood the insurance was taken care of by tender of the check and that she would get a statement in the mail. There is insufficient evidence from which to determine whether John Pierce had the authority to immediately bind Clarendon National to a contract of insurance with plaintiff upon receipt of the $11,458.00.
23. Commerce Capital sent a "Notice of Request for Reinstatement" to Clarendon National on 8 April 2000 and defendant-employers' workers compensation insurance was reinstated effective 10 May 2000.
24. The issue before the Full Commission is whether defendant-carrier or defendant-employer is responsible for the payment of plaintiff's medical bills and compensation for his permanent partial disability rating.
25. Commerce Capital as Attorney-in-Fact for defendant-employer was required to give defendant-carrier 10 days prior written notice of cancellation. If the 16 March 2000 "Notice of Intent to Cancel" that Commerce Capital sent to defendant-carrier satisfies Commerce Capital's obligations under N.C. Gen. Stat. § 97-99 and defendant-employer's insurance policy cancellation requirements, the 3 April 2000 "Notice of Cancellation" retroactively cancelled defendant-employer's insurance as of 2 April 2000. If the "Notice of Intent to Cancel" did not satisfy the requirements of N.C. Gen. Stat. § 97-99 or defendant-employer's insurance policy cancellation requirements of defendant-employer's workers' compensation insurance contract, Commerce Capital's "Notice of Cancellation" could not take effect until 10 days after written notice was given to defendant-carrier which would have been 13 April 2000 at the earliest and defendant-employer's workers' compensation insurance would have been in effect through the date of plaintiff's injury on 8 April 2000. North Carolina General Statute § 97-99, does not compel defendant-carrier to wait 10 days to cancel upon receipt of a notice of cancellation from the insured. There is insufficient evidence from which to determine when Clarendon National received the notice of cancellation.
26. The Full Commission finds that the "Notice of Intent to Cancel" that Commerce Capital as Attorney-in-Fact sent to defendant-carrier on 16 March 2000 and the subsequent "Notice of Cancellation" satisfied the requirements of N.C. Gen. Stat. § 97-99
and defendant-employer's insurance policy cancellation requirements. Defendant-carrier, Clarendon National Insurance Company did not initiate the cancellation of defendant-employer's insurance; Commerce Capital as Attorney-in-Fact initiated the cancellation. Defendant-employer had no workers' compensation insurance on the date plaintiff was injured.
27. Defendant-employer's failure to carry workers' compensation insurance was not willful. However, defendant-employer is still subject to penalties for failure to carry workers' compensation insurance.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to his right foot, which arose out of and in the course of his employment on 8 April 2000 when he fell approximately fifteen (15) feet off a ladder, shattering his right foot and causing a hairline fracture to his left foot. N.C. Gen. Stat. § 97-2(6).
2. The medical treatment plaintiff received from the medical providers as indicated in stipulation number nine was reasonable and necessary pursuant to N.C. Gen. Stat. §§ 97-2(19) and 97-25.
3. Plaintiff has a twenty-one percent (21%) permanent partial disability rating to his right foot related to the compensable injury by accident, and is entitled to payment of permanent partial disability of his right foot, as well as, payment of medical bills. N.C. Gen. Stat. §§ 97-31(14); 97-25.
4. Every employer subject to the Workers' Compensation Act is required to carry workers' compensation insurance by an authorized carrier. N.C. Gen. Stat. § 97-93(a).
5. Section 97-99(a) as it read at the time of plaintiff's injury provided, in pertinent part:
 No policy form shall be approved unless the same shall provide a 30-day prior notice of an intention to cancel same by the carrier to the insured by registered mail or certified mail[.] The carrier may cancel the policy for nonpayment of premium on 10 days' written notice to the insured, and the insured may cancel the policy on 10 days' written notice to the carrier. Whenever notice of intention to cancel is required to be given by registered or certified mail, no cancellation by the insurer shall be effective unless and until such method is employed and completed.
2. N.C. Gen. Stat. § 97-99 (2000) (Now codified at N.C. Gen. Stat. §58-36-105). Section 97-99 applies to all workers' compensation insurance. Moore v. Adams Elec. Co., 264 N.C. 667, 142 S.E.2d 659 (1965).
3. Section 58-35-85, as it read in 2000, provided that upon receipt of an insurance premium finance company's request for cancellation by the insurer, the insurance contract shall be cancelled with the same force and effect as if the notice of cancellation had been submitted by the insured.
4. The determination whether Harbor Welding had workers' compensation insurance on 8 April 2000, hinges on the issue of whether John Pierce was an agent for Clarendon National pursuant to N.C. Gen. Stat. § 58-33-100(a), at the time Pierce accepted premiums from Harbor Welding on 5 April 2000. Pursuant to N.C. Gen. Stat. § 58-33-100(a), "Any agent, broker or limited representative who acts for a person other than himself negotiating a contract of insurance is, for the purpose of receiving the premium therefore, the company's agent, whatever conditions or stipulations may be contained in the policy or contract." There exists insufficient evidence from which to determine whether John Pierce was acting as an agent, broker or limited representative of Clarendon National when he accepted the premium payment from Harbor Welding. Commerce Capital financed Harbor Welding's workers' compensation insurance. When the money was given to Pierce, that money was then transmitted to Commerce Capital who would request reinstatement of the policy. Due to lack of evidence that Pierce was authorized to immediately bind Clarendon National upon receipt of premiums, the Full Commission cannot conclude as a matter of law that Harbor Welding was insured by Clarendon National Insurance on 8 April 2000 as a result of the payment of premiums on 5 April 2000 to John Pierce of Beam, Cooper, Gainey 
Associates. Cf. Wiles v. Mullinax, 275 N.C. 473, 168 S.E.2d 366 (1969) (Testimony of agent sufficient to show agent had actual or apparent authority to immediately bind insurance company).
5. The Full Commission finds that the "Notice of Intent to Cancel" that Commerce Capital as Attorney-in-Fact sent to defendant-carrier on 16 March 2000 and the subsequent "Notice of Cancellation" satisfied the requirements of N.C. Gen. Stat. § 97-99 and defendant-employer's insurance policy cancellation requirements. Defendant-carrier, Clarendon National Insurance Company did not initiate the cancellation of defendant-employer's insurance; Commerce Capital as Attorney-in-Fact initiated the cancellation. Defendant-employer had no workers' compensation insurance on the date plaintiff was injured.
6. Because there was proper cancellation by Commerce Capital, Inc., defendant-employer was not insured on the date of injury. Defendant-employer is responsible for payment of plaintiff's medical bills and payment to plaintiff for his 21% permanent partial disability rating to his right foot. N.C. Gen. Stat. § 97-31.
7. Defendant-employer's failure to carry workers' compensation was not willful. If defendant-employer timely pays all compensation due plaintiff, the Full Commission will consider waiver of the penalties for failure to carry workers' compensation insurance.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 AWARD
1. Defendant-employer shall pay plaintiff's medical bills in the amount of $12,728.79 as stipulated in stipulation number nine, in accordance to the Industrial Commission fee schedule.
2. Defendant-employer shall pay to plaintiff the sum of $7,232.80 as permanent partial disability.
3. Defendant-employer shall pay plaintiff's attorney a reasonable attorney's fee in the amount of 25% of the amounts awarded to plaintiff herein. This amount shall be deducted from the amount owed plaintiff and paid by defendant-employer directly to plaintiff's attorney.
4. Defendants shall pay the costs due this Commission.
This the 10th day of November 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER